UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DISTRICT
_____

JEFF LUKASAK,

        Plaintiff,

   v.

PREMIER SPORTS EVENTS LLC, a
Delaware limited liability company, and
STEVE GRIFFIN, an individual,

        Defendants.

---

Mark S. Wilkinson (P68765)
PALADIN EMPLOYMENT LAW PLLC
*Attorney for Plaintiff*
251 North Rose Street
Suite 200, PMB № 288
Kalamazoo, MI 49007-3860
(tel.) 269.978.2474
mark@paladinemploymentlaw.com

---

_____

# C O M P L A I N T

Plaintiff Jeff Lukasak alleges the following for his complaint against Defendants Premier Sports Events LLC and Steve Griffin.

### NATURE OF THE CASE

1.    This case involves the classic squeeze out of an entrepreneur who built a flourishing business, and then later sold it and agreed to stay on as the company's president.

2.    When the investors fronting the money for the buyout changed over, a new group of investors lead by Defendant Steve Griffin wanted a more "hands-on" role and his management style quickly rankled employees. Chaos reigned at the company from charges of discrimination and harassment to allegations of retaliation, reprisals, and unethical behavior.

3.     The complaints and charges of employment discrimination, harassment, and retaliation were flying fast and furious against Defendant Griffin.  He needed a fall guy and he chose Plaintiff Jeff Lukasak.

4.     Defendant Griffin zeroed in on Lukasak because the new investors owed him a pile of cash under Lukasak's various buyout agreements and the investors were hemorrhaging money. They and Defendants Premier Sports Events LLC and Griffin could try to avoid making these payouts if they could somehow show they had "cause" under Lukasak's employment agreement to end his employment.

5.     Dismissing Lukasak also gave Defendants Premier Sports Events LLC and Griffin the opportunity to argue they were working to address the swirling problems that Defendant Griffin had created and to give the appearance that they treated employee complaints seriously.

6.     More than a year before Lukasak's dismissal, an employee had raised a concern about a run-in she had with Lukasak.  This employee considered the matter closed and resolved, and she did not complain about it or request an investigation. Once Defendant Griffin learned about these circumstances he quickly seized the opportunity to move the focus off of himself.

7.     Defendants Griffin and Premier Sports Events LLC immediately launched a workplace investigation that eventually lead to the termination of Lukasak's employment. Defendants claimed they had cause to do so under Lukasak's employment agreement.

8.     However, Defendant Premier Sports Events LLC did not have anything close to "cause" to end Lukasak's employment.  Therefore, under his buyout and employment agreements, Defendant Premier Sports Events LLC owes Lukasak at least $1,172,782.50 required by the agreements and as liquidated damages for unpaid wages due at the time of his dismissal.

9.     And, importantly, Defendants Premier Sports Events LLC and Griffin would not have targeted Lukasak for the sham investigation and fired him but for his gender (male) and, by doing so,

they violated Michigan's Elliott-Larsen Civil Rights Act. They needed a fall guy for their own discriminatory and retaliatory behavior and they discriminated against Lukasak when they picked him.

## PARTIES, JURISDICTION, AND VENUE

10. Plaintiff Jeff Lukasak is an individual person who resides in Kalamazoo County, Michigan.

11. Defendant Premier Sports Events LLC is a limited liability company organized under the laws of the State of Delaware. The company maintains its principal place of business in Portsmouth, New Hampshire.

12. Defendant Premier Sports Events LLC maintains an office in Kalamazoo, Michigan where it has carried on a continuous and systematic part of its general business within the State of Michigan.

13. Defendant Premier Sports Events LLC has also done all of the following acts within the State of Michigan: transacted business; owned, used, and possessed personal property situated within the State of Michigan; and entered into contracts for services to be performed and for materials to be furnished in the State of Michigan.

14. Defendant Steve Griffin is an individual person who resides in the State of Rhode Island.

15. Defendant Griffin has done all of the following acts within the State of Michigan: transacted business; owned, used, and possessed personal property situated within the State of Michigan; and performed acts in the State of Michigan that give rise to an action for employment discrimination and breach of contract.

16. The Court has personal jurisdiction over Defendants under Michigan Compiled Laws Sections 600.705, 600.711, and 600.715. FED. R. CIV. P. 4(k)(1)(A).

17.     The Court has original subject matter jurisdiction over the claims asserted in the complaint under Title 28 of the United States Code, Section 1332(a), because the amount in controversy exceeds $75,000 and the parties are citizens of different states.

18.     Venue is appropriate in this judicial district in accordance with Title 28 of the United States Code, Section 1391(b).

## GENERAL ALLEGATIONS

19.     Plaintiff Jeff Lukasak started the business central to the dispute in this case (Premier Sports Events).  The business provides managed housing services for youth sports teams and other events.  This typically includes services such as room rate negotiation, contract administration, event management, staff room negotiation and coordination, branded reservation websites, live event reservation support and customer support, pre- and post-event reporting, and commission and rebate processing.

20.     Under Lukasak's vision and leadership, the business became enormously profitable and successful to the point where it employed over 40 employees in Kalamazoo.

### The 2014 Buyout and Employment Agreement

21.     By 2014, private equity groups and investors began to take notice of the business Lukasak had built and Lukasak ultimately structured a buyout deal with an event management group from New Hampshire called Legacy Global Sports LLC and its affiliated company, LGS Logistics LLC.

22.     Under the terms of the buyout deal, a new entity had been formed to operate the business after the buyout, which was called Premier Sports Events LLC, one of the defendants in this case. (Previously, the business had been operated by a Michigan corporation called Premier Sports Events Inc.)

23.     LGS Logistics LLC is the sole member of Defendant Premier Sports Events LLC.

Legacy Global Sports LLC and LGS Logistics LLC treat Defendant Premier Sports Events LLC as a division of Legacy Global Sports and as an affiliate of the company.

24.     After the buyout, Lukasak agreed to continue to work for Defendant Premier Sports Events LLC as the "division president" or "division leader."

25.     Defendant Premier Sports Events LLC and Lukasak entered into an employment agreement with a term beginning on April 9, 2014 and ending on December 31, 2019. (Ex. 1, Employment Agreement)

26.     Under the employment agreement, Lukasak earned an annual salary of $145,000, which had increased to $150,000 by 2019. (*Id.* ¶ 5(a))

27.     The employment agreement also entitled Lukasak to performance bonuses of up to 20% of his annual salary. (*Id.* ¶¶ 5(b), 5(c))

28.     The employment agreement further provided that Defendant Premier Sports Events LLC could only terminate Lukasak's employment agreement for cause as defined by the agreement. (*Id.* ¶ 6(d))

### *The Bonus Incentive Agreement*

29.     As part of his buyout deal, Lukasak entered into a bonus incentive agreement with Defendant Premier Sports Events LLC. (Ex. 2, Bonus Incentive Agreement)

30.     Under the bonus incentive agreement, Lukasak earned a bonus of 10% of the net profits of the company during the fiscal year.  These payments were due on February 15 of each calendar year at "a sum equivalent to 10% of the Net Profit for the prior year." (*Id.* ¶ 3)

31.     The bonus incentive agreement also provided that should Lukasak's employment end, then Defendant Premier Sports Events LLC would have to pay him a buyout at the "buyout price," which was a calculation of the average net profits of the company over the 3 years preceding the termination of employment, multiplied by a 5.5 multiplier, and then multiplied by

10%. (*Id.* ¶ 5)

### New Investors Come In and Defendants Terminate
### Lukasak's Employment Without Cause

32.     In December 2018, a new group of investors took control of Defendant Premier Sports Events LLC as well as the majority ownership interests in Legacy Global Sports LLC and LGS Logistics LLC.  After the ownership change, Defendant Steve Griffin had been appointed as the president and chief executive officer of Legacy Global Sports LLC.

33.     Defendant Griffin had the ultimate responsibility for managing Defendant Premier Sports Events LLC on behalf of LGS Logistics LLC, although Lukasak managed the day-to-day affairs of the company and ran the business.

34.     Defendant Griffin and the new ownership group had a significantly different management style and they created discord with employees of Defendant Premier Sports Events. Several employees filed charges of employment discrimination with fair employment agencies against Defendant Griffin alleging gender discrimination, harassment, and retaliation.

35.     Defendant Griffin is also at the center of litigation involving former and current employees and their claims against Legacy Global Sports LLC and LGS Logistics LLC.

36.     Through all the chaos and turmoil that Defendant Griffin created, Defendant Griffin learned that an employee had also raised a concern about Lukasak relating to an event that occurred in April 2018.  The employee made very clear that she considered the matter closed and resolved, and she did not want to file any sort of complaint or request an investigation of the matter.

37.     But to deflect the focus away from himself and his own misdeeds, Defendant Griffin saw an opportunity for himself and Defendant Premier Sports Events LLC—and he pounced.  He immediately launched an investigation into the long-resolved concern raised about

Lukasak by this employee.

38.   The employee at the center of this "complaint" repeatedly informed Defendant Griffin that she did not want any sort of investigation performed, but Defendant Griffin persisted with the investigation anyway.

39.   Ultimately, at Defendant Griffin's direction, Defendant Premier Sports Events LLC terminated Lukasak's employment to try to give the appearance that he and Defendant Premier Sports Events LLC, LGS Logistics LLC, and Legacy Global Sports LLC took employee complaints seriously and that they were tolerant, forward thinking employers as it relates to allegations of harassment and discrimination.

40.   This was all a ruse and done to provide the appearance of corporate compliance (clumsy as it was) and to better position Defendant Griffin, Defendant Premier Sports Events LLC, LGS Logistics LLC, and Legacy Global Sports LLC in litigating their disputes with other employees.  It also gave Defendants an opportunity to try to hold back roughly $1M in payments owed to Lukasak.

41.   In terminating Lukasak's employment, Defendant Premier Sports Events LLC informed Lukasak that it believed it had cause to terminate his employment.  The termination of Lukasak's employment occurred on May 20, 2019.

42.   Defendant Premier Sports Events LLC did not have cause to terminate Lukasak's employment.

## COUNT 1
### BREACH OF CONTRACT
### (EMPLOYMENT AGREEMENT)

43.   Lukasak repeats all the previous allegations in his complaint and he alleges this count against Defendant Premier Sports Events LLC.

44.   Lukasak and Defendant Premier Sports Events LLC entered into an employment

agreement under which Lukasak would work for the company until December 31, 2019. (Ex. 1, Employment Agreement)

45.     Defendant Premier Sports Events LLC could only terminate the agreement before December 31, 2019 if it had cause to do so as defined by the employment agreement. (*Id.* ¶ 6(d))

46.     The agreement further provided that Lukasak would receive 12-months worth of salary and insurance benefit payments (medical, dental, and vision) if Defendant Premier Sports Events LLC terminated his employment without cause and there had been a change of ownership (which there had).

47.     Defendant Premier Sports Events LLC breached the employment agreement by terminating Lukasak's employment without cause and by failing to pay him the contractually mandated severance payments.

48.     Lukasak has suffered damages that include, but are not limited to, a severance payment of $180,000.00 (plus interest) for severance pay due under the employment agreement, plus the cost of health, vision, and dental insurance until May 20, 2020.

## COUNT 2
### BREACH OF CONTRACT
### (BONUS INCENTIVE AGREEMENT)

49.      Lukasak repeats all the previous allegations in his complaint and he alleges this count against Defendant Premier Sports Events LLC.

50.     Lukasak and Defendant Premier Sports Events LLC entered into a bonus incentive agreement under which Lukasak earned a bonus of 10% based on the net profits of the company during the previous year. (Ex. 2, Bonus Incentive Agreement)

51.     These payments were due on February 15 of each year at "a sum equivalent to 10% of the Net Profit for the prior year." (*Id.* ¶ 3)

52.     Based on Defendant Premier Sports Events LLC's net profit for 2018, Defendant

owed Lukasak $142,227.00 on February 15, 2019.

53.    Defendant Premier Sports Events LLC failed to pay Lukasak the $142,227.00 due and owing on February 15, 2019 and has continued to fail to pay this amount despite demands for payment.

54.    Additionally, due to the termination of his employment, Defendant Premier Sports Events LLC must pay Lukasak a buyout at the buyout price.

55.    Based on Defendant Premier Sports Events LLC's average net profits for the last three years, Defendant owes Lukasak a buyout of $708,328.50 under the bonus incentive agreement.  Defendant has not paid the $708,328.50 buyout owed to Lukasak.

56.    Lukasak has suffered damages that include, but are not limited to, the 2018 bonus incentive payment ($142,227.00) plus interest and the bonus incentive buyout payment ($708,328.50).

### COUNT 3
### FAILURE TO PAY WAGES DUE AT
### TERMINATION UNDER MAINE LAW

57.    Lukasak repeats all the previous allegations in his complaint and he alleges this count against Defendant Premier Sports Events LLC.

58.    Lukasak and Defendant Premier Sports Events LLC entered into a bonus incentive agreement under which Lukasak earned a bonus of 10% based on the net profits of the company during the prior year. (Ex. 2, Bonus Incentive Agreement)

59.    These payments were due on February 15 of each year. at "a sum equivalent to 10% of the Net Profit for the prior year." (*Id.* ¶ 3)

60.    Based on Defendant Premier Sports Events LLC's net profit for 2018, Defendant owed Lukasak $142,227.00 on February 15, 2019.

61.    Defendant Premier Sports Events LLC failed to pay Lukasak the $142,227.00 due

and owing on February 15, 2019 and has continued to fail to pay this amount despite demands for payment.

62.     The parties' agreement provided that Maine law would govern the payment of wages owed to Lukasak under the bonus incentive agreement. (*Id.* ¶ 8(c)).

63.     Defendant Premier Sports Events LLC terminated Lukasak's employment on May 20, 2019.

64.     Under Maine law, "[a]n employee leaving employment must be paid in full no later than the employee's next established payday." ME. REV. STAT. tit. 26, § 626.

65.     Despite a demand for payment, Defendant Premier Sports Events LLC failed to pay Lukasak the $142,227.00 due and owing to him.

66.     Under Maine law, "[a]n employer found in violation of this section [requiring the full payment of compensation to employees] is liable for the amount of unpaid wages and, in addition, the judgment rendered in favor of the employee or employees must include a reasonable rate of interest, an additional amount equal to twice the amount of those wages as liquidated damages and costs of suit, including a reasonable attorney's fee." ME. REV. STAT. Tit. 26, § 626.

67.     Defendant Premier Sports Events LLC violated Maine law by failing to pay Lukasak his final wages due at the time of his termination.

68.     Lukasak has suffered damages that include double the amount of wages he is owed (*i.e.*, $284,454.00), plus interest, litigation costs, and reasonable attorney's fees.

## COUNT 4
### GENDER DISCRIMINATION IN VIOLATION OF
### MICHIGAN'S ELLIOTT-LARSEN CIVIL RIGHTS ACT

69.     Lukasak repeats all the previous allegations in his complaint and he alleges this count against Defendants Premier Sports Events LLC and Steve Griffin.

70.     Defendant Premier Sports Events LLC and Steve Griffin are each considered an employer under Michigan's Elliott-Larsen Civil Rights Act.

71.     Defendants terminated Lukasak's employment.

72.     Lukasak's gender (male) was one of Defendants' motives or reasons that made a difference in deciding to terminate Lukasak's employment.

73.     Lukasak has suffered damages as a result of the Defendants' unlawful actions that include, but are not limited to, loss of career opportunities, lost wages and benefits, emotional distress, attorney's fees, and litigation costs.

JURY DEMAND

74.     Lukasak demands a trial by jury on all issues so triable. FED. R. CIV. P. 38(b).

RELIEF REQUESTED

75.     Plaintiff Jeff Lukasak requests that the Court enter a judgment in his favor and against Defendant Premier Sports Events LLC for counts 1, 2, and 3 of his complaint in excess of $1,172,782.50, plus interest and the cost of continued health, vision, and dental insurance until May 20, 2020.

76.     Lukasak also requests that the Court enter a judgment in his favor and against Defendant Premier Sports Events LLC and Defendant Steve Griffin (jointly and severally) for count 4 of his complaint in an amount that will fully and fairly compensate Lukasak for all of his damages, losses, expenses, back wages, emotional distress, attorney's fees, litigation costs, and interest.

77.      Lukasak further requests that the court grant him any additional relief, both legal and equitable, as the Court determines to be appropriate and just under the circumstances.

JEFF LUKASAK

Dated:  June 10, 2019                     By:    /s/  Mark S. Wilkinson

                                          Mark S. Wilkinson (P68765)
                                          *Attorney for Plaintiff*
                                          PALADIN EMPLOYMENT LAW PLLC
                                          251 North Rose Street
                                          Suite 200, PMB № 288
                                          Kalamazoo, MI 49007-3860
                                          (tel.) 269.978.2474
                                          mark@paladinemploymentlaw.com