**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| JEFF LUKASAK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Docket No. 2:20-cv-00124-NT |
| ) | |
| PREMIER SPORTS ) | |
| EVENTS LLC, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER ON PLAINTIFF'S MOTION FOR LEAVE**
**TO FILE SECOND AMENDED COMPLAINT**

Before me is the Plaintiff's motion for leave to file a Second Amended Complaint ("**Pl.'s Mot.**") (ECF No. 50). For the reasons stated below, the motion is **DENIED**.

**BACKGROUND**

Plaintiff Jeff Lukasak is the founder of a sports management company, Premier Sports Events, that was purchased in 2014 by an event management group, Legacy Global Sports LLC, and an affiliate. Proposed Second Am. Compl. ("**PSAC**") ¶¶ 21, 23 (ECF No. 52). Legacy Global Sports LLC is part of a group of companies ("**Legacy**") that includes Defendant Legacy Global Sports LP ("**LGS**") and Defendant Premier Sports Events, LLC, ("**PSE**") the latter of which was formed after the 2014 buyout to operate Premier Sports Events' business. PSAC ¶¶ 24, 25. At the time of this buyout, Mr. Lukasak signed an employment agreement and a bonus incentive agreement. PSAC ¶¶ 27, 31. The party designated as the "Employer" in both contracts

is PSE. *See* Employment Agreement 1 (ECF No. 3-1); Bonus Incentive Agreement 1 (ECF No. 13-2). PSE is considered to be a division of Legacy. PSAC ¶ 25.

In December 2018, after a new group of investors took control of PSE and secured a majority ownership interest in LGS and other components of Legacy, Defendant Stephen Griffin was appointed the president and CEO of Legacy. PSAC ¶ 37. In this role, Mr. Griffin was ultimately responsible for PSE's operations, while Mr. Lukasak managed PSE's day-to-day business. PSAC ¶ 38. In May 2019, PSE, at the direction of Mr. Griffin, terminated Mr. Lukasak's employment. PSAC ¶¶ 44, 46.

After Mr. Lukasak was terminated, he filed the instant lawsuit against LGS, PSE, and Mr. Griffin, alleging various claims not relevant to the instant motion. Compl. (ECF No. 1). After filing the initial Complaint, the Plaintiff amended his Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1). First Am. Compl. (ECF No. 3). Mr. Lukasak now seeks leave to file the PSAC in order to add a new claim against Mr. Griffin for gender discrimination in violation of Title VII of the Civil Rights Act of 1964. Pl.'s Mot.; PSAC. Defendant Griffin opposes the motion ("**Def.'s Opp'n**") (ECF No. 53).

## LEGAL STANDARD

A plaintiff who has already amended his or her complaint may further amend only with the written consent of the opposing party or with leave of court. *United States ex rel. Poteet v. Bahler Med., Inc.* 619 F.3d 104, 116 (1st Cir. 2010); *see* Fed. R. Civ. P. 15(a)(1), (2). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). But while the Federal Rules of Civil Procedure "reflect[] a liberal

amendment policy . . . the district court enjoys significant latitude in deciding whether to grant leave to amend." *Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 60–61 (1st Cir. 2018) (alteration in original) (quoting *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 55 (1st Cir. 2008)). And leave to amend may be denied for a multitude of reasons, including on the ground of futility. *Id.* at 60.

An amendment is futile if the amended claim(s) "would fail to state a claim upon which relief could be granted." *Rife v. One W. Bank, F.S.B.*, 873 F.3d 17, 21 (1st Cir. 2017) (quoting *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996)). To make this assessment, I apply the same standard as I would for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Morgan v. Town of Lexington*, 823 F.3d 737, 742 (1st Cir. 2016). That is, I must determine whether, when taking the plaintiff's alleged facts as true, the complaint "plausibly narrate[s] a claim for relief." *Germanowski v. Harris*, 854 F.3d 68, 71 (1st Cir. 2017) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)). While I must credit any of the plaintiff's allegations of fact, the plaintiff's "conclusory legal allegations" are disregarded. *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 53 (1st Cir. 2013).

## DISCUSSION

Defendant Griffin outlines multiple arguments as to why he believes the Plaintiff's proposed amendment (adding the Title VII claim) is futile. Def.'s Opp'n 6–10. Because I agree with the Defendant's argument that individual employees are not liable under Title VII, I need not address the Defendant's remaining arguments.

3

Title VII prohibits "unlawful employment practice[s]" perpetrated by an "employer." 42 U.S.C. § 2000e-2(a). The statute defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such a person," with exceptions not relevant here. 42 U.S.C. § 2000e(b). A "person," in turn, includes individuals, as well as partnerships, associations, corporations, and other types of legal entities. 42 U.S.C. § 2000e(a).

Because the definition of "employer" encompasses not only the "person" having at least fifteen employees but also "any agent of such a person," it was previously an open question whether employees who are "agents" of the employing entity can themselves be liable under Title VII. *See Fantini v. Salem State Coll.*, 557 F.3d 22, 29 (1st Cir. 2009). Over a decade ago, the First Circuit, in line with its sister circuits, held that Title VII does not impose liability on individual employees. *See id.* at 29–30. In so holding, the court pointed to language in other circuits explaining that the reference to an employer's agents in Title VII's definition of "employer" exists "to import respondeat superior liability into Title VII." *Id.* at 30 (quoting *Smith v. Amedisys, Inc.*, 298 F.3d 434, 448–49 (5th Cir. 2002)); *id.* at 29–30 ("We interpret the inclusion of agent in Title VII's definition of employer simply to establish a limit on an employer's liability for its employees' actions." (quoting *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180 (4th Cir. 1998)))). That language does not extend liability to those agents themselves.

The Plaintiff attempts to downplay *Fantini*'s explicit holding by pointing out that individuals can potentially be liable under Title VII so long as they qualify as an

4

"employer" under Title VII. Pl. Lukasak's Reply Br. in Supp. of Pl.'s Renewed Mot. for Leave to File SAC ("**Pl.'s Reply**") 1–2 (ECF No. 54) (citing *Fantini*, 557 F.3d at 31). While true, this does nothing more than point back to Title VII's definition of who (or what) constitutes an employer.[1] And the Plaintiff simultaneously ignores this same definition's limitations on who constitutes an employer—in particular, that an employer must have fifteen or more employees. In other words, it does not matter for purposes of the Plaintiff's motion whether an individual can *ever* be an employer within the context of Title VII, but rather it only matters whether an individual who is himself an employee—as Mr. Griffin is here—can be a Title VII employer.

In arguing that an individual like Mr. Griffin can be a Title VII employer, the Plaintiff first emphasizes that Title VII's definition includes an employer's "agent" and that a "person," as defined by Title VII, can include an individual. Pl.'s Reply 2. But the Plaintiff fails to grapple with the First Circuit's discussion in *Fantini* that the reference to an employer's "agent" in the definition of "employer" does not impose liability on these individual agents. And the inclusion of individuals in the definition of "person" is unremarkable, since individuals can be Title VII employers so long as they meet the requirements of § 2000e(b), including that they have fifteen or more employees.

The Plaintiff goes on to argue that an employee can have multiple employers, pointing to the First Circuit's usage of "the 'integrated employer' test, to determine

---

[1] The Plaintiff's citation to *Ramirez v. DeCoster* proves the same. *See* No. 2:11-CV-00294-JAW, 2012 WL 2367179, at *13 (D. Me. June 21, 2012).

5

whether separate entities are part of a single employer for purposes of Title VII liability." Pl.'s Reply 2 (citing *Romano v. U-Haul Int'l*, 233 F.3d 655, 666 (1st Cir. 2000)). The Plaintiff appears to be arguing that Mr. Lukasak was employed not just by one or more of the Legacy entities, but also by Mr. Griffin himself.

Even assuming the Plaintiff's premise, I see no way to apply the "integrated enterprise" test (which the Plaintiff renames the "integrated employer" test) in this context. The Plaintiff plucks this test from a case involving a lawsuit against two entities where the crucial issue was whether the two entities were sufficiently related to be considered a single employer in the eyes of the law, *see Romano*, 233 F.3d at 661 & n.3, 667–68, while failing to appreciate the disparate context in which he now seeks to apply it. As the Plaintiff himself acknowledges, this test is used "to determine whether *separate entities* are part of a single employer."[2] Pl.'s Reply 2 (emphasis added). But Mr. Griffin is not an entity.

That this test is used to evaluate entities, not people, is also apparent from the factors that comprise it. The integrated enterprise test looks to "interrelation of operations," "common management," "centralized control of labor relations," and "common ownership." *Romano*, 233 F.3d at 662. I am unaware of the "integrated enterprise" test being applied to evaluate whether an individual is an "employer" as defined by Title VII, and I decline to apply that test here.

---

[2] It is no surprise that the integrated enterprise test is used to evaluate the relationship among multiple entities, rather than people, since it was "first developed to determine whether interrelated companies should be treated as one entity under the National Labor Relations Act." *See Romano v. U-Haul Int'l*, 233 F.3d 655, 662 (1st Cir. 2000).

At bottom, the crux of the issue is whether Mr. Griffin constitutes Mr. Lukasak's "employer"—or, one of his employers—as defined by Title VII. It is clear that he does not. The PSAC implicitly acknowledges the reality that Mr. Griffin was but another employee—even if the most powerful employee—at Legacy. It notes that Mr. Griffin was "appointed" as president and CEO of Legacy. PSAC ¶ 37. Employees are "appointed"; employers generally do the appointing. And the PSAC also notes that it was PSE—not Mr. Griffin—that terminated Mr. Lukasak's employment. PSAC ¶ 44. While the Plaintiff alleges that this action was taken at Mr. Griffin's direction, that is entirely the point—Mr. Griffin could not himself act because he was not Mr. Lukasak's employer. He could only act through PSE, the entity (or, one of the entities) that actually employed Mr. Lukasak.

The PSAC also acknowledges that Mr. Lukasak worked for PSE, rather than for any particular individual within Legacy. *See* PSAC ¶ 26 ("After the buyout, Lukasak agreed to continue to work for [PSE] . . . ."). This acknowledgment is consistent with Mr. Lukasak's employment agreement and his bonus incentive agreement, both of which designate PSE as the "Employer."[3]

Furthermore, the Plaintiff puts forth a theory in support of his Title VII claim against Mr. Griffin that instead undermines it. The Plaintiff contends that he was fired in order to give "the appearance that Griffin took employee complaints seriously

---

[3] I recognize that Mr. Griffin was not yet the president and CEO of Legacy at the time that these agreements were executed, but I see no reason why that should make any difference. The point is that Mr. Lukasak contracted with the entity (or, one of the entities) that employed him, not with any particular individual within Legacy or one of its constituent entities, and he did so because it was that entity that employed him, rather than any particular individual.

7

so as to . . . avoid further scrutiny due to his own harassment." Pl.'s Mot. 7. If Mr. Griffin acted to deflect attention from himself, that necessarily means that Mr. Griffin was concerned about the attention of someone or something. The logical conclusion is that Mr. Griffin was concerned about his own job security within Legacy, further demonstrating that Mr. Griffin was an individual employee of Legacy, at least as contemplated by Title VII.

While Mr. Griffin may have been at the top of Legacy's organizational structure and had significant control over its operations, that does not make him an employer. He was but one cog in the larger company machine. The PSAC does not allege that Mr. Griffin was a sole proprietor with fifteen or more employees.[4] Were that the case, the outcome here might be different. *See Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 694 (D. Md. 2017) ("Victory [Van Lines] is not a sole proprietorship, such that it and [its principal owner] would be legally treated as one and the same. Rather, it is owned by Great Nation Moving, LLC, which makes Great Nation, not [the principal owner, the plaintiff's] employer.").

---

[4] Nor would it be helpful for the Plaintiff to argue that Mr. Griffin could be an alter ego of one or more of the Legacy entities. The idea that an individual can be liable under Title VII because that individual is an alter ego of an employing entity has been roundly rejected by the courts to have considered it. *See, e.g.*, *Rios v. Municipality of Guaynabo*, 938 F. Supp. 2d 235, 251–52 (D.P.R. 2013) (citing cases) ("The Court [sic] of Appeals that have tackled this issue have squarely rejected the alter ego doctrine as *contrary* to Congress' aversion to individual liability under Title VII." (internal quotation marks omitted)); *Bates v. Private Jet Com. Grp., Inc.*, No. 11-CV-547-SM, 2013 WL 865849, at *1 (D.N.H. Mar. 7, 2013) (same); *Miller v. Hall*, 245 F. Supp. 2d 191, 193–94 (D. Me. 2003) ("The presence of an individual owner of a corporate defendant in a Title VII action is superfluous."). And courts in in the First Circuit have observed that such a doctrine is in significant tension with *Fantini*. *See Rios*, 938 F. Supp. 2d at 251–52; *Bates*, 2013 WL 865489, at *1.

The Plaintiff appears to draw the erroneous conclusion that authority and control are enough to make someone a Title VII employer. But the First Circuit and a litany of other courts have made clear that Title VII claims cannot be brought against individuals who are employed by a larger entity, even when that individual is the boss. *See, e.g., Brandt v. Fitzpatrick*, 957 F.3d 67, 74 n.5 (1st Cir. 2020) (Commissioner of the Maine Department of Corrections); *Vera v. McHugh*, 622 F.3d 17, 25 n.8 (1st Cir. 2010) (Secretary of the Army); *Fantini*, 557 F.3d at 25, 31 (President of college); *Colston v. Cleveland Pub. Libr.*, 522 F. App'x 332, 334, 336 (6th Cir. 2013) (CEO and Executive Director of library); *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 196 (2d Cir. 2005) (defendant exercised supervisory authority for the LLC that had employed the plaintiff); *Huard v. Kennebec Cnty.*, No. 1:16-cv-00473-GZS, 2019 WL 1264864, at *1, *4 (D. Me. Mar. 19, 2019) (current and former Kennebec County sheriffs); *Hagenah v. Berkshire Cnty. ARC, Inc.*, No. 3:16-cv-30141-KAR, 2018 WL 1801175, at *1, *6 (D. Mass. Apr. 16, 2018) (President, CEO, and Executive Director of nonprofit employer).

Because Mr. Griffin is not Mr. Lukasak's employer within the meaning of Title VII, he cannot be liable for any Title VII violation that might have occurred in this case. The proposed amendment is thus futile and will not be permitted.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Plaintiff's motion for leave to file the Second Amended Complaint (ECF No. 50).

Defendant Griffin is **ORDERED** to file an Answer to the First Amended Complaint, and/or a motion to dismiss, within fourteen days of this order.

The parties are also **ORDERED** to file a status report regarding the bankruptcy proceedings of LGS and PSE within fourteen days of this order.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 3rd day of February, 2021.